IN THE SUPREME COURT OF NORTH CAROLINA

No. 191PA25

Filed 22 May 2026

STATE OF NORTH CAROLINA

v.

BRYAN SCOTT TADLOCK

On discretionary review pursuant to N.C.G.S. § 7A-31 of the decision of a divided panel of the Court of Appeals, 299 N.C. App. 754 (2025), finding no error after appeal from judgments entered on 26 October 2023 by Judge Gary M. Gavenus in Superior Court, Haywood County. Heard in the Supreme Court on 19 February 2026.

*Jeff Jackson, Attorney General, by Teresa M. Postell, Special Deputy Attorney General, for the State-appellee.*

*Phoebe W. Dee for defendant-appellant.*

BERGER, Justice.

Defendant was tried and convicted of, among other things, two counts of assault by strangulation. At the close of the State's evidence, defense counsel moved to dismiss "some of the indictments," but he specifically exempted the assault by strangulation charges from his motion to dismiss. Defense counsel informed the trial court that he could not "stand here in good faith and ask the court to dismiss [the assault by strangulation charges because] . . . there's evidence to go to a jury to consider there. So my motions are with respect to four of the six charges."

Defendant renewed his motion to dismiss at the close of all evidence, and the trial court sua sponte asked "why there are two distinct charges of strangulation" and "how they are distinct in time." Defense counsel declined to take a position, responding simply that he would "just leave it in the court's discretion."

The Court of Appeals reached the merits of defendant's argument and concluded that the State presented sufficient evidence to survive a motion to dismiss the two separate counts of assault by strangulation despite the fact that no such motion was made in the trial court. *State v. Tadlock*, 299 N.C. App. 754, 762 (2025). The dissent would have held the trial court "erred in denying defendant's motion to dismiss one of the two assault by strangulation charges." *Id.* at 775 (Freeman, J., concurring in part and dissenting in part).

We allowed defendant's petition for discretionary review to consider whether the Court of Appeals' majority erred in determining the State presented sufficient evidence to support two separate counts of assault by strangulation. In analyzing this question, we must consider as a preliminary matter whether the Court of Appeals erred under Rule 10 of the Rules of Appellate Procedure in reaching the merits of an argument that was not properly preserved. We reverse in part and vacate in part the decision of the Court of Appeals.

## I. Factual and Procedural Background

The State's evidence tended to show that defendant was married to the victim

in this case, K.S.[1]  On 18 March 2022, defendant had been drinking heavily and later assaulted K.S. in a dispute over a necklace.  Defendant held K.S. at gun point, dragged her by her hair, and later placed the barrel of the firearm into K.S.'s mouth.

When K.S. fought back against the attack, defendant wrapped his hands around K.S.'s neck from behind and began to choke her.  K.S. then fell when defendant struck her in the head with the firearm, and while she was on the floor, defendant began choking her again with one hand while holding his gun in the other hand.  At some point during the struggle, defendant dropped his gun on the ground to choke K.S. with both hands and K.S. was able to throw the gun across the room. As the two continued to struggle on the floor, defendant pressed his arm against K.S.'s throat, and she lost consciousness.

K.S. regained consciousness, and defendant initiated sexual intercourse with K.S.  She did not resist out of fear of retaliation by defendant.  K.S. planned to leave the house when defendant fell asleep, and she "did whatever he wanted, said whatever he wanted, [and] agreed to whatever he wanted so that he wouldn't get angry again."  K.S. later went to the hospital to be treated.

Defendant was indicted for attempted murder, first-degree kidnapping, first-degree forcible rape, assault with a deadly weapon with intent to kill inflicting serious injury, and two counts of assault by strangulation under N.C.G.S. § 14-32.4.  At the

---

[1] We use the victim's initials throughout to protect her identity.  *See* N.C. R. App. P. 42.

close of the State's evidence, defense counsel moved to dismiss "some of the indictments" but specifically exempted the assault by strangulation charges from his motion to dismiss. Defense counsel stated:

> Now, with respect, Judge, to the assault by strangulation, I can't stand here in good faith and ask the court to dismiss those. I can perhaps make other arguments, but as far as the allegations, the charges, there's evidence to go to a jury to consider there. So my motions are with respect to four of the six charges.

After the State responded to defendant's motions to dismiss and notably omitted any argument regarding the assault by strangulation charges, the trial court denied defendant's motions.

Defendant renewed his motion to dismiss at the close of all evidence, and the trial court sua sponte asked "why there are two distinct charges of strangulation" and "how they are distinct in time." Defense counsel responded by stating, "[T]he only thing [is] . . . [i]t could have been conceivably consolidated into one indictment[,] . . . [b]ut I'll just leave it in the court's discretion, Judge." The State requested the trial court "let both [charges] go to the jury, and then if [it] feel[s] like it's one continuous assault, [it] can always arrest judgment on one of them." After hearing from the parties, the trial court again denied defendant's motions to dismiss.

The jury found defendant not guilty of attempted first-degree murder, but found him guilty on all other felony charges, including both counts of assault by strangulation. Defendant was sentenced to 73 to 100 months imprisonment for kidnapping, 25 to 42 months for assault with a deadly weapon inflicting serious

injury, 240 to 348 months for forcible rape, and 6 to 17 months for each charge of assault by strangulation.

On appeal, defendant argued the trial court erred by: (1) refusing to instruct the jury on the defense of voluntary intoxication; (2) failing to distinguish between the injuries caused by each assault by strangulation; (3) failing to intervene ex mero motu during the State's closing arguments; and (4) assessing a $25,000 fine against defendant at sentencing. *Tadlock*, 299 N.C. App. at 759. The Court of Appeals majority rejected all of defendant's arguments, concluded there was "no error at trial," and affirmed the judgments of the trial court. *Id.* at 772. Defendant also contended that the trial court erred in denying his motion to dismiss one count of assault by strangulation. *Id.* at 759.

The Court of Appeals recognized that defendant "did not actually make a motion to dismiss either charge of [a]ssault by [s]trangulation" and that "[n]either party has addressed preservation of this issue on appeal," but determined the issue was preserved under this Court's decision in *State v. Golder*, 374 N.C. 238 (2020). *Tadlock*, 299 N.C. App at 762.

In reaching the merits, the majority rejected all of defendant's arguments and concluded that the trial court did not err in submitting both assault by strangulation charges to the jury because the State presented sufficient evidence "from which the jury could find a distinct interruption between [d]efendant's strangulation of K.S. with his hands and his strangulation of K.S. with his arm." *Id.* at 765. One judge on

the panel disagreed and reasoned that under this Court's precedent in *State v. Dew*, 379 N.C. 64 (2021), the State failed to present sufficient evidence of a distinct interruption because "[w]hile there is evidence of defendant's distinct actions within the assault, the only apparent distinct interruption occurred when the victim fell unconscious after defendant choked her for the third time." *Tadlock*, 299 N.C. App. at 773–75 (Freeman, J., concurring in part and dissenting in part).

We allowed defendant's petition for discretionary review to determine whether, under *Dew*, the State failed to present sufficient evidence to support multiple charges of assault by strangulation. However, because the issue was not properly preserved, we conclude the Court of Appeals erred in reaching the merits of defendant's appeal concerning the motion to dismiss. Accordingly, we reverse the Court of Appeals' determination that this issue was preserved for appellate review and therefore vacate the portion of the Court of Appeals' decision addressing the merits of this issue. As no other portion of the Court of Appeals' decision is before us, we do not address the other issues reached by the Court of Appeals.

## II. Discussion

Preservation rules "serve[ ] crucial functions in our justice system," *State v. Reber*, 386 N.C. 153, 157 (2024), and the Rules of Appellate Procedure generally prohibit appellate review of issues not properly preserved, *see* N.C. R. App. P. 10. Rule 10(a)(3) states that "[i]n a criminal case, a defendant may not make insufficiency of the evidence to prove the crime charged the basis of an issue presented on appeal

unless a motion to dismiss the action, or for judgment as in case of nonsuit, is made at trial." N.C. R. App. P. 10(a)(3). Thus, a defendant may not argue sufficiency of the evidence on appeal when no motion to dismiss is made.

This Court has recognized that "a motion to dismiss places an affirmative duty upon the trial court to determine whether, when taken in the light most favorable to the State, there is substantial evidence for every element of each charge against the accused." *Golder*, 374 N.C. at 246. Such a motion "preserves all insufficiency of the evidence issues for appellate review." *Id.*

By the rule's plain language, a defendant may not challenge sufficiency of the evidence in the appellate courts, *inter alia*, "*unless* a motion to dismiss the action . . . is made at trial." N.C. R. App. P. 10(a)(3) (emphasis added). Neither Rule 10(a)(3) nor *Golder* allow defendants to circumvent or otherwise bypass preservation requirements.

Here, defense counsel moved to dismiss four charges at the close of the State's evidence. Defense counsel did not move to dismiss either of the assault by strangulation charges and specifically announced to the trial court that he could not in good conscience request the trial court dismiss those charges. Thus, with respect to the strangulation charges, he made no motion at all.

Defense counsel was given another opportunity to make a motion to dismiss when the trial court inquired if the State's evidence was sufficient to sustain the two assault by strangulation charges. Defense counsel declined to assert any argument,

other than saying he would leave it in the trial court's discretion. Defense counsel did not attempt to make a motion following up on the trial court's inquiry, and he did not request dismissal or otherwise assert that the State's evidence was deficient.

The Court of Appeals correctly acknowledged that defendant did not move to dismiss either charge of assault by strangulation. It concluded, however, that the issue was reviewable because the trial court heard arguments from both parties. *Tadlock*, 299 N.C. App. at 762. The Court of Appeals relied on *Golder*'s holding that a "defendant's simple act of moving to dismiss at the proper time preserved all issues related to the sufficiency of the evidence for appellate review." *Id.* (quoting *Golder*, 374 N.C. at 246). But the Court of Appeals did not point to any act by defendant that could reasonably be construed as a motion, and the mere statement that the matter was in the trial court's discretion does not qualify as such.

*Golder* addressed what a timely motion to dismiss preserves for appellate review, and neither *Golder* nor the text of Rule 10 excuse a defendant's failure to make such a motion. The Court of Appeals misconstrued *Golder*, and its reasoning would essentially gut the preservation requirements of Rule 10(a)(3).[2]

_____

[2] We also note that defense counsel's acknowledgement that he could not in good faith make an argument for the assault by strangulation charges is consistent with Rule 3.1 of the North Carolina Rules of Professional Conduct, which requires attorneys to advance only meritorious claims. *See* N.C. Rules of Pro. Conduct r. 3.1. The comment to that section specifically states that lawyers must determine if "they can make good faith arguments in support of their clients' positions." When this is not possible, such an argument is deemed frivolous and may not be advanced. *Id.* It would be incongruent for an appellate court to say on the one hand that defense counsel did not assert an argument because it would have been frivolous, yet on the other hold that such frivolous argument was preserved.

We also note that preservation under Rule 10(a)(3) is offense specific. The rule provides that when a defendant's motion to dismiss is allowed or "sustained on appeal, it shall have the force and effect of a verdict of 'not guilty' as to such defendant." N.C. R. App. P. 10(a)(3). The Court of Appeals reading of *Golder* and Rule 10(a)(3) neglects the fact that jury verdicts of "guilty" or "not guilty" are rendered on an offense-by-offense basis, not for all offenses joined for trial. It cannot reasonably be argued that the rule contemplates that a motion to dismiss made for one offense somehow applies to all offenses for which a defendant is being tried. Put another way, although *Golder* indicates that a motion to dismiss preserves all issues related to sufficiency as to that charge, it does not preserve sufficiency issues related to a defendant's other charges.[3]

It is the burden of the party, not the trial court, to preserve issues for appellate review. Except in narrow circumstances where preservation exists by operation of

---

[3] Defendant and the Court of Appeals appear to suggest that even when there are multiple charges of assault by strangulation and there is evidence from which, when taken in the light most favorable to the State, a jury could reasonably infer that the defendant strangled the victim multiple times, this somehow precludes submitting those charges to the jury for consideration. This front-end determination essentially provides a volume discount to a defendant and prevents the jury from fully considering the evidence presented. As the State correctly pointed out, to the extent the legal issue of distinct interruption from *State v. Dew*, 379 N.C. 64 (2021), is implicated, when the facts lead to multiple guilty verdicts, it is for the trial court to make the legal determination if merger should occur under *Dew* and judgment arrested on any necessary conviction. *See State v. Fields*, 374 N.C. 629, 637 (2020) ("Our holding that defendant could not be punished for habitual misdemeanor assault on the facts of this case is not the result of any fatal defect existing in the record. Rather, it is based [in part] on . . . the fact that both of defendant's convictions arose from the same assaultive act. Accordingly, we agree that the Court of Appeals should have arrested the trial court's judgment for habitual misdemeanor assault rather than vacating the judgment.").

law or review is authorized pursuant to an argument for plain error, issues not preserved in the trial court are not properly before the appellate court. To hold that a motion to dismiss one charge would extend the right to appeal based on the sufficiency of the evidence as to all charges in a case would be an egregious expansion of appellate review and inconsistent with the safeguards our appellate rules and courts have strictly upheld.

### III.    Conclusion

Under Rule 10(a)(3), motions to dismiss for sufficiency of the evidence are offense specific. Defendant declined to make a motion to dismiss at trial for his two assault by strangulation offenses, and the Court of Appeals erred in treating the issue as preserved. We therefore reverse in part and vacate in part the decision of the Court of Appeals.

REVERSED IN PART; VACATED IN PART.

Chief Justice NEWBY concurring.

I join the majority's opinion in full. I agree that the Court of Appeals majority decision should be modified and affirmed because defendant failed to preserve for appellate review any motion to dismiss the second count of assault by strangulation.

I write separately to point out that if the issue had been properly before this Court, each successive strangulation committed by defendant constitutes a unique felonious action, as contemplated by the criminal statute. *See* N.C.G.S. § 14-32.4(b) (2025); *State v. Rambert*, 341 N.C. 173, 459 S.E.2d 510 (1995). The *Dew* "distinct interruption" analysis simply does not apply to the crime of assault by strangulation. *See State v. Dew*, 379 N.C. 64, 864 S.E.2d 268 (2021).

"Unless the conduct is covered under some other provision of law providing greater punishment, any person who assaults another person and inflicts physical injury by strangulation is guilty of a Class H felony." N.C.G.S. § 14-32.4(b).[1] Strangulation is "a form of asphyxia characterized by closure of the blood vessels and/or air passages of the neck as a result of external pressure on the neck brought about by hanging, ligature, or the manual assertion of pressure." N.C.P.I.—Crim.

---

[1] The General Assembly criminalized assault by strangulation in a 2004 act meant to heighten protection for victims of domestic violence. *See* An Act to Strengthen the Laws Against Domestic Violence, to Provide Additional Assistance to Domestic Violence Victims, and to Make Other Changes as Recommended by the House Select Committee on Domestic Violence, S.L. 2004-186, § 9.1, 2004 N.C. Sess. Laws 716, 733 (codified at N.C.G.S. § 14-32.4(b)).

208.61 n.1 (June 2023); *see State v. Braxton*, 183 N.C. App. 36, 42, 643 S.E.2d 637, 642 (using the Pattern Jury Instructions to define "strangulation"), *disc. rev. denied*, 361 N.C. 697, 653 S.E.2d 4 (2007). This Court has never addressed how to delineate between successive strangulations. If defendant's motion to dismiss had been preserved properly, this case would have given us an opportunity to determine whether the "distinct interruption" test applies to the felony crime of assault by strangulation, or whether each completed "strangulation" constitutes an independent chargeable offense.

We adopted the "distinct interruption" test for general assault crimes in *State v. Dew*. There this Court determined that a man could be charged with two general assault crimes—two counts of assault with a deadly weapon inflicting serious injury—when he continuously beat his girlfriend for two hours in a trailer, forced her to clean up the mess, and then continuously beat her again for two hours in a car. *Dew*, 379 N.C. at 73–74, 864 S.E.2d at 276. This Court determined that the break in time and the change in location constituted a "distinct interruption" to support charging the man with two counts of assault with a deadly weapon inflicting serious injury. *Id.*

In doing so, we provided a framework on how to charge general assault crimes. We defined "assault" as

> an overt act or an attempt, or the unequivocal appearance
> of an attempt, with force and violence, to do some
> immediate physical injury to the person of another, which
> show of force or menace of violence must be sufficient to put

-12-

a person of reasonable firmness in fear of immediate bodily
harm.

*Id.* at 70, 864 S.E.2d at 273–74 (quoting *State v. Roberts*, 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967)). In other words, assault is " '[t]he threat or use of force on another that causes that person to have a reasonable apprehension of imminent harmful or offensive contact' and '[p]opularly, any attack.' " *Id.* at 70, 864 S.E.2d at 274 (alterations in original) (quoting *Assault*, Black's Law Dictionary (11th ed. 2019)). "From these definitions," we deduced that "assault is a broad concept that can include more than one contact with another person"—i.e., a "single punch" or "a deluge of punches in a single fight." *Id.*

Using this framework, we explained that "[m]ultiple contacts can still be considered a single assault, even though each punch or kick would require a different thought process." *Id.* at 72, 864 S.E.2d at 275. As such, we held that "the State may charge a defendant with multiple counts of assault only when there is substantial evidence that a distinct interruption occurred between assaults." *Id.* A distinct interruption can "take the form of an intervening event, a lapse of time in which a reasonable person could calm down, an interruption in the momentum of the attack, a change in location, or some other clear break delineating the end of one assault and the beginning of another." *Id.*

This Court previously determined that a different standard applied to a more specific offense than a general assault crime. In *State v. Rambert*, a defendant fired three gunshots into a vehicle. 341 N.C. at 174, 459 S.E.2d at 511. He argued that

double jeopardy principles prevented him from being charged with three counts of discharging a firearm into occupied property. *Id.* This Court determined that each time the defendant fired the weapon constituted a "separate and distinct act[ ]." *Id.* at 176, 459 S.E.2d at 512. We reasoned that "[e]ach shot, fired from a pistol, as opposed to a machine gun or other automatic weapon, required that [the] defendant employ his thought processes each time he fired the weapon. Each act was distinct in time, and each bullet hit the vehicle in a different place." *Id.* at 176–77, 459 S.E.2d at 513. Accordingly, firing three consecutive shots into an occupied vehicle supported charging the criminal defendant with three counts of discharging a firearm into occupied property. *Id.* at 177, 459 S.E.2d at 513.

In *Dew*, this Court distinguished general assault crimes from the firearm offense at issue in *Rambert*. *Dew*, 379 N.C. at 72, 864 S.E.2d at 275. Specifically, this Court stated that "[d]ischarging a firearm means firing a shot; each distinctly fired shot is a separate discharge of a firearm. The same is not true of assault which . . . might refer to a single harmful contact or several harmful contacts within a single incident." *Id.* Thus, an "assault" can include multiple, continuous actions, whereas the crime of discharging a firearm into occupied property requires only one action— firing the weapon.

This Court has drawn a similar distinction between certain sex offenses. For the general crime of taking indecent liberties with a child, we applied *Dew*'s "distinct interruption" test. *See State v. Calderon*, 388 N.C. 700, 709–11, 923 S.E.2d 530,

537–39 (2025). Contrarily, for the more specific sex crime of rape, we have stated that "rape is not a continuous offense," meaning that "each act of intercourse constitutes a distinct and separate offense." *State v. Dudley*, 319 N.C. 656, 659, 356 S.E.2d 361, 363 (1987) (quoting *State v. Small*, 31 N.C. App. 556, 559, 230 S.E.2d 425, 427 (1976), *cert. denied*, 291 N.C. 715, 232 S.E.2d 207 (1977)). Like the distinction between assault and discharging a firearm into occupied property, the crime of taking indecent liberties with a child can be made up of multiple, continuous actions, whereas the crime of rape requires only one action.

By criminalizing the specific crime of "assault *by strangulation*," the General Assembly intended the act of strangulation to be punished like the specific crimes charged in *Rambert* and *Dudley*—discharging a firearm and rape. Accordingly, the "distinct interruption" test applied to general crimes like assault and taking indecent liberties with a child does not apply to the crime of assault by strangulation. Each completed strangulation—i.e., each time a defendant has supplied "external pressure on the [victim's] neck . . . by hanging, ligature, or the manual assertion of pressure" that results in "a form of asphyxia characterized by closure of the blood vessels and/or air passages of the neck"—supports charging a defendant with independent counts of assault by strangulation. N.C.P.I.—Crim. 208.61 n.1.

Therefore, the evidence presented in the instant case supported charging defendant with multiple counts of assault by strangulation. But, as the majority

opinion observes, defendant did not move to dismiss the second count. The Court of Appeals' decision is properly modified and affirmed.

I respectfully concur.